IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOEL PULIDO and JORGE ZEPEDA, individually and on behalf of all others similarly situated, | )<br>)<br>)<br>) |
| Plaintiffs, | )<br>) Case No. 22-cv-1438 |
| vs. | )<br>) |
| UNIVERSAL INTERMODAL SERVICES, INC. | ) Jury Demanded<br>) |
| Defendant. | )<br>)<br>) |

**CLASS ACTION COMPLAINT**

Plaintiffs, Joel Pulido and Jorge Zepeda, ("Plaintiffs"), bring this action against Defendants Universal Intermodal Services, Inc. ("Universal" or "Defendant"), for its violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq.* ("RICO"), federal "Truth-in-Leasing" regulations, 49 C.F.R. § 376.12 *et seq.* ("TIL"), and Illinois Common Law.

Plaintiffs are truckers that were formerly employed by Defendant, a "motor carrier." Defendant required Plaintiffs to establish escrow accounts with Defendant – these accounts would be used to pay for agreed upon expenses and costs. Such escrow accounts are common in the trucking industry and are regulated by federal regulations. Those regulations require motor carriers to return the escrow money to the drivers no later than 45 days after termination. Unfortunately, Defendant kept Plaintiffs escrow money for no reason. Further, Defendant regularly and intentionally keeps other drivers' escrow money. The drivers are left with no recourse except for hiring counsel and pursuing their claims in court.

1

## JURISDICTION AND VENUE

1. This Court has original federal question subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 with respect to Plaintiff's RICO and TIL claims.

2. This Court has supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367 as those claims are so related to the federal claims that they form part of the same case or controversy.

3. This Court has personal jurisdiction over Defendant and venue is appropriate in this District under 28 U.S.C. § 1391(a) because Defendant does business in this District and operates a facility here, hired Plaintiffs in this District, and because a substantial portion of the events giving rise to this cause of action occurred in this District.

## PARTIES

4. Plaintiff Joel Pulido ("Pulido") is a resident of the State of Illinois and this District and was formerly employed by Universal.

5. Plaintiff Jorge Zepeda ("Zepeda") is a resident of the State of Illinois and this District and was formerly employed by Universal.

6. Plaintiffs are "owner-operator" truck drivers: they own their own trucks and lease the trucks and their driving services to motor carriers.

7. Universal Intermodal Services, Inc. ("Universal") is a Michigan corporation, with its registered agent Corporate Creations Network Inc., located at 305 S Northwest Hwy 300, Park Ridge, IL 60068.

8. Universal's headquarters are at 12755 East Nine Mile Road, Warren, MI, 48089.

9. Universal owns and operates a facility in Harvey, Illinois in Cook County.

10. Universal is a motor carrier: they transport property for compensation.

## FACTUAL ALLEGATIONS

11. In March of 2020, Pulido was hired by Universal as an owner-operator truck driver, performing trucking services based out of Universal's Harvey, Illinois location.

12. In March of 2020, Zepeda was hired by Universal as an owner-operator truck driver, performing trucking services based out of Universal's Harvey, Illinois location.

13. Universal required Plaintiffs to agree that Universal would withhold a certain amount of money per week directly from Plaintiffs' paycheck to fund an "escrow" account. Universal held the funds and had full control and access over them.

14. Universal represented to Plaintiffs that the escrow account would be used to pay any tolls or tickets or similar costs incurred by Plaintiffs (and for which Plaintiffs might be responsible) but that Universal might be required to pay on their behalf.

15. Such escrow accounts are common in the industry and are regulated by the Department of Transportation pursuant to federal law. *See, e.g.,* 49 C.F.R. § 376.12(k)*;* 49 U.S.C. § 14102.

16. Universal represented to Plaintiffs that once Plaintiffs left Universal's employment, Universal would return all of Plaintiffs' funds from the escrow account in a timely manner, minus any legitimate costs incurred.

17. Plaintiffs trusted Universal and placed their confidence in them because Universal was their employer. Further, employers in the trucking industry routinely require the establishment of similar escrow accounts.

18. Escrow funds, as they are withheld from employees' paychecks, are unpaid wages held in trust by the employer.

19. Truck drivers are required by federal regulations to have an Electronic Log Device ("ELD") in their truck while working. ELD's require a monthly subscription or maintenance fee to be paid to an ELD service provider.

20. Federal regulations prohibit motor carriers such as Defendants from requiring owner-operators like Plaintiffs to purchase or rent a specific device provided by the carrier or a specific ELD service provider chosen by the carrier. 49 C.F.R. § 376.12(i).

21. However, Defendants required Plaintiffs to use a specific ELD that they provided to Plaintiffs and required Defendants to use and pay for that specific ELD maintenance subscription.

22. Approximately $15 each week was withheld from Plaintiffs' paycheck to pay for the service provider.

23. Once an owner-operator no longer works for Universal, they are entitled to receive a full refund of their escrow money minus any legitimate deductions – Universal no longer has any claim to the withheld funds, which are the employees' earned wages.

24. In fact, federal regulations require carriers like Universal to return all funds in the escrow account within 45 days and to provide a final accounting of any deductions made from the fund.

## PLAINTIFF PULIDO'S ALLEGATIONS

25. Plaintiff Pulido terminated his employment with Universal sometime in or around August 2020.

26. He returned his Electronic Log Device to Universal's Harvey, Illinois location shortly thereafter.

27. When he left Universal, Pulido's escrow account contained approximately $850.

28. The exact amount of money can easily be determined by reference to Universal's records regarding what was withheld from Pulido's paycheck, what legitimate expenses (if any) were paid out of the escrow to Universal, and what remains in the escrow account.

29. Universal did not return any of Pulido's escrow account money within 45 days nor provide a written accounting of any deductions.

30. Instead, Universal claimed that the escrow account also acted as a deposit on the ELD equipment – the equipment Universal required Pulido to use in his truck.

31. Pulido did not agree to allow Defendants to use the escrow funds as a deposit on equipment.

32. Regardless, Pulido did, in fact, return the ELD to Defendants.

33. Plaintiffs has repeatedly asked multiple agents of Defendants to return his money.

34. Defendants falsely claimed that Defendants did not return the ELD.

35. Once Plaintiff retained counsel and filed and served Universal with an earlier state lawsuit (now dismissed), Universal, mirabile dictu, suddenly "found" Pulido's ELD.

## PLAINTIFF ZEPEDA'S ALLEGATIONS

36. Plaintiff Zepeda terminated his employment with Universal in June 2020.

37. When he left Universal, Zepeda's escrow account contained approximately $1500.

38. The exact amount of money can easily be determined by reference to Universal's records regarding what was withheld from Zepeda's paycheck, what legitimate expenses (if any) were paid out of the escrow to Universal, and what remains in the escrow account.

39. Universal did not return any of Pulido's escrow account money within 45 days nor provide a written accounting of any deductions.

40. After inquiring multiple times at the Harvey location where he formerly worked, Universal's employees at the Harvey location said that they could not help him, and that he had to contact the "corporate" offices in Michigan.

41. Zepeda repeatedly called and emailed various agents of Universal's over the next few months in an attempt to have Universal pay him the money they had taken from him.

42. Eventually, Universal requested, via email, Zepeda send in copies of certain documents, which he did.

43. Universal said they never received the documents.

44. After again sending the documents that were requested, Universal's employees and agents ignored Zepeda and his requests for his escrow money.

45. Universal has not returned the escrow money nor given any reason for their failure to do so.

## **RICO ALLEGATIONS AND UNIVERSAL'S PATTERN OF MISCONDUCT**

46. Both Plaintiffs are aware of a number of other individuals from whom Universal has unlawfully withheld escrow account money even after repeated demands.

47. Based on that knowledge and on information and belief, Universal regularly, intentionally, and unlawfully refuses to return escrow account funds to their former employees.

48. Thus, Universal's representation that they would return Plaintiffs' escrow money was knowingly false at the time it was made.

49. Plaintiffs relied on Universal's assurances regarding the mandatory escrow account when they accepted the position at Universal and allowed them to withhold money from his paycheck each week.

50. Universal intentionally misrepresented that they would return Plaintiffs' escrow funds.

51. Universal intentionally and without justification retained Plaintiffs' escrow funds after the employment relationship ended.

52. When Plaintiffs repeatedly requested Universal return their money, Universal once again lied and made a number of misrepresentations and eventually stopped responding to Plaintiffs.

53. Universal used that money for its own purposes – i.e., as cash for its business operations.

54. Universal Logistics Holding is the parent company of Defendant Universal Intermodal and is an enterprise engaged in and whose activities affect interstate commerce – to wit, interstate trucking. Defendant, is thus associated with Universal Logistics Holding as a subsidiary.

55. Defendant, and unknown corporate officers and employees of Defendant, agreed to and did conduct and participate in the conduct of Universal Logistics Holding through a pattern of racketeering activity and for the unlawful purpose of intentionally defrauding Plaintiffs and other owner-operator drivers.

56. Specifically, Defendant engaged in a scheme to steal Plaintiffs' and other owner-operator's money by requiring and accepting escrow money with no intention of repaying that money, but affirmatively representing that they would return the money within 45 days of termination.

57. Further, when Plaintiffs and other owner-operators sought the illicitly held funds, Defendant doubled-down and gave them the runaround – ignoring their requests or simply making false statements and excuses as to why the drivers were not entitled to their money.

58. This scheme to defraud was accomplished and furthered by the use of the mails and wires: Defendant communicated with the Plaintiffs regarding the terms and conditions of their employment and regarding the escrow money via faxes, emails, and telephone calls.

59. Plaintiffs were directly injured by this scheme as Defendant unlawfully refused to return their stolen funds.

## CLASS ALLEGATIONS

60. Plaintiffs incorporate each paragraph above as if fully set forth here.

61. Plaintiffs brings this action on behalf of themselves and the following class of similarly situated individuals:

> All persons in the United States who were employed by Universal Intermodal Services, Inc. as an owner-operator, who established an escrow account, and whose escrow account funds were not returned to them within 45 days of the termination of their lease agreement.

Plaintiffs reserve the right to amend or modify the Class definition as necessary following discovery.

62. On information and belief, the Class is so numerous that joinder is impracticable. While the exact number is unknown, Plaintiffs believe that Defendant has stolen the escrow fund of a substantial number of other owner-operators.

63. Common questions of law and fact exist and predominate over individual questions and include:

    a. Whether Defendant intentionally defrauded Plaintiffs and the class;

    b. Whether that fraud was furthered by the use of mails and the wires;

    c. Whether class members were fraudulently induced to agree to work for Universal based on Universal's false promise to return their escrow money;

    d. Whether Defendant unlawfully retained class members' escrow funds;

    e. Whether Defendant owed class members a fiduciary duty;

    f. Whether escrow funds may be properly used as a "deposit" for equipment Defendant required class members to use;

g. The extent of any damages incurred by Class members as a result of Defendant's actions.

64. Plaintiffs' claims are also typical and co-extensive with the claims of the class because he and members of the Class have all suffered the same injuries as a result of identical conduct by Defendant.

65. Plaintiffs will fairly and adequately protect the interests of the proposed Class and they have retained counsel with experience in consumer law, Illinois law, and federal class actions.

66. A class action is superior to other methods of adjudication. The Class seeks injunctive relief applicable to the Class as a whole; due to the complexity of the claims, individual actions are not likely to be economically feasible; based on the possibility of a very large Class size, individual litigation would be a burden on the courts and result in delay and inconsistent results.

67. Plaintiffs incorporate each paragraph above as if fully stated here.

68. Defendant Universal Intermodal conducted and participated in the conduct of the Universal Logistics Holdings' affairs through the pattern of racketeering and activity described above, in violation of 18 U.S.C. § 1962(c).

69. Plaintiffs and members of the proposed class were injured by having their escrow money unlawfully withheld by Defendant.

70. WHEREFORE, Plaintiffs, on behalf of themselves and the proposed class, request the following relief:

   a. Treble damages;

   b. Reasonable attorney's fees and costs;

   c. Any other relief the Court deems equitable and just.

## COUNT II – VIOLATION OF 49 C.F.R. § 376.12(k)

71. Plaintiffs incorporate each paragraph above as if fully stated here.

72. Federal Truth-In-Leasing regulations are implemented by the Department of Transportation pursuant to the Motor Carrier Act of 1980, codified as amended in various sections of 49 U.S.C.

73. Under the regulations, Carriers such as Universal are required to return any unused escrow monies to owner-operators like Plaintiffs within 45 days of termination and provide a final accounting to the owner-operator. 49 C.F.R. §376.12(k)(6).

74. Owner-operators may recover damages and attorney's fees from carriers who violate the Truth-In-Leasing regulations. 49 U.S.C. § 14704(a), (e).

75. Universal failed to return Plaintiffs' escrow monies within 45 days of termination in violation of 49 C.F.R. §376.12(k)(6).

76. WHEREFORE, Plaintiffs, on behalf of themselves and the proposed class, request the following relief:

   a. Damages in the amount of the improperly withheld escrow monies;
   b. Reasonable attorney's fees and costs;
   c. Any other relief the Court deems equitable and just.

## COUNT III – FRAUDULENT INDUCEMENT

77. Plaintiffs incorporate each paragraph above as if fully stated here.

78. At the time Plaintiffs agreed to work for Universal, Universal knew or should have known Plaintiffs would *not* have their escrow money returned – it was their custom and practice and/or part of an intentional scheme.

10

79. Plaintiffs agreed to work for Universal based on their representation that the escrow money would be returned to them once their employment ended.

80. If Plaintiffs knew that Universal was going to steal money from them, they would not have agreed to work for Universal.

81. WHEREFORE, Plaintiffs, on behalf of themselves and the proposed class, request the following relief:

   a. A Declaratory Judgment that any contract between Universal and Plaintiffs is voidable at Plaintiffs' discretion.

## COUNT IV – CONVERSION

82. Plaintiffs incorporate each paragraph above as if fully stated here.

83. Once Plaintiffs were no longer employed by Defendants, they were entitled to the full amount of the escrow account, minus any legitimate deductions.

84. Plaintiffs have made repeated requests for the return of the funds.

85. Defendants have not returned any of the funds and continue to have possession and control of the funds.

86. Defendants have no basis to continue to withhold the funds but refuse to return them to Plaintiffs.

87. Plaintiffs were damaged by having his money stolen by Defendants and having their repeated requests for its return rebuffed.

88. Plaintiffs have suffered emotional damages in the form of stress, aggravation, embarrassment, and annoyance as a direct result of Universal's conversion.

89. The amount of funds is easily ascertainable from Defendants' business records.

90. WHEREFORE, Plaintiffs, on behalf of themselves and the proposed class, request the following relief:

    a. Injunctive relief, including an order requiring Defendants to hire and pay for an independent third-party to administer all current and future escrow account programs;

    b. Actual damages, including emotional distress damages;

    c. Punitive damages;

    d. Costs and expenses; and

    e. Any other relief the Court deems equitable and just.

## CLAIM V – EMBEZZLEMENT

91. Plaintiffs incorporate each paragraph above as if fully stated here.

92. Universal had a fiduciary duty to Plaintiffs and members of the proposed class vis-à-vis their escrow funds.

93. Universal intended to and in fact did convert Plaintiffs escrow funds to their own use – i.e., to use as cash funds for their business operations.

94. Defendants have no basis to continue to withhold the funds but refuse to return them to Plaintiffs.

95. Plaintiffs were damaged by having his money stolen by Defendants and having their repeated requests for its return rebuffed.

96. Plaintiffs have suffered emotional damages in the form of stress, aggravation, embarrassment, and annoyance as a direct result of Universal's conversion.

97. The amount of funds is easily ascertainable from Defendants' business records.

98. WHEREFORE, Plaintiffs, on behalf of themselves and the proposed class, request the following relief:

    a.    Injunctive relief, including an order requiring Defendants to hire and pay for an independent third-party to administer all current and future escrow account programs;

    b.    Actual damages, including emotional distress damages;

    c.    Punitive damages;

    d.    Costs and expenses; and

    e.    Any other relief the Court deems equitable and just.

## COUNT VI – UNJUST ENRICHMENT

99. Plaintiffs incorporate each paragraph above as if fully stated here.

100. Defendants have unjustly retained Plaintiffs' and the proposed class members' funds.

101. This retention is fundamentally unjust, inequitable, and unconscionable.

102. Plaintiffs have suffered emotional damages in the form of stress, aggravation, embarrassment, and annoyance as a direct result of Universal's theft.

103. WHEREFORE, Plaintiffs, on behalf of themselves and the proposed class, request the following relief:

    a.    Injunctive relief, including an order requiring Defendants to hire and pay for an independent third-party to administer all current and future escrow account programs;

    b.    Actual damages, including emotional distress damages;

    c.    Punitive damages;

    d.    Costs and expenses; and

    e.    Any other relief the Court deems equitable and just.

## COUNT VII – BREACH OF FIDUCIARY DUTY

104. Plaintiffs incorporate each paragraph above as if fully stated here.

105. Universal, as the employer of Plaintiffs and the class members and as the party responsible for the escrow accounts, was in a fiduciary relationship with Plaintiffs and the class members.

106. Additionally, the Truth-In-Leasing Act created a statutory trust for the benefit of owner-operators with regards to their escrow accounts.

107. Defendants required Plaintiffs and the class members to deposit money into the escrow accounts that they also controlled.

108. Defendants, by withholding Plaintiffs' and class members' funds once the employment relationship ended violated the fiduciary duty they owed to Plaintiffs and the class vis-à-vis the escrow funds.

109. Plaintiffs and the class were damaged as a result.

110. Plaintiffs and the class have suffered emotional damages in the form of stress, aggravation, and annoyance as a direct result of Universal's breach of their duty.

111. Plaintiffs requests the Arbitrator enter an award in his favor consisting of:

    a. Injunctive relief, including an order requiring Defendants to hire and pay for an independent third-party to administer all current and future escrow account programs;

    b. Actual damages, including emotional distress damages;

    c. Punitive damages;

    d. Costs and expenses; and

    e. Any other relief the Court deems equitable and just.

[SIGNATURE PAGE FOLLOWS]

By: /s/ Michael W. Drew

Michael Drew
**Neighborhood Legal LLC**
20 N. Clark Suite 3300
Chicago, IL 60602
Ph: (312) 967-7220
mwd@neighborhood-legal.com